235 N.J. Super. 557 (1989)
563 A.2d 856
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PETRO RADZIWIL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 23, 1989.
Decided August 29, 1989.
*561 Before Judges KING, ASHBEY and SKILLMAN.
William E. Norris, Designated Counsel, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; William E. Norris, of counsel and on the brief).
Janet Flanagan, Deputy Attorney General, argued the cause for respondent (Peter N. Perretti, Jr., Attorney General, attorney; Janet Flanagan, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
The significant issue presented by this appeal is whether evidence that a defendant regularly became intoxicated every weekend at a particular bar is admissible as evidence of a habit to prove that defendant was intoxicated at the time of the automobile collision which resulted in his conviction for aggravated manslaughter and death by auto. We conclude that such evidence was properly admitted under the circumstances of this case. We also reject defendant's other arguments relating to the conduct of his trial. Therefore, we affirm the judgment of conviction. However, we vacate defendant's sentence and remand for resentencing.
Defendant was convicted by a jury of aggravated manslaughter, in violation of N.J.S.A. 2C:11-4a, and death by auto, in violation of N.J.S.A. 2C:11-5. The trial judge merged the conviction for death by auto into the conviction for aggravated manslaughter and sentenced defendant to a 20 year term of imprisonment with 10 years of parole ineligibility.
Defendant's conviction was based on an automobile collision which occurred at the intersection of Route 537 and Paint Island Spring Road in Freehold Township slightly past midnight on November 25, 1984. Waiting for two other cars traveling in the opposite direction to pass before he made a left turn, Daleston Cote stopped his car at the intersection. While he was waiting, Cote was struck from behind by another car *562 traveling at a high rate of speed. The impact from the collision propelled Cote's vehicle across the highway and caused a second collision with a car traveling in the opposite direction. Keith MacCormack, a passenger in Cote's car, was thrown from the car after the second collision and killed. The car which struck Cote's vehicle left the scene of the accident and no one observed its license plate number. However, the police determined from the debris at the scene that the hit-and-run vehicle was a maroon 1979 Oldsmobile.
A year and a half later, a police officer who had been involved in investigating this hit-and-run accident observed a maroon 1979 Oldsmobile with evident front end repairs. Further investigation revealed that defendant owned this car on the day of the accident and sold it four days later. Forensic analysis of the damaged front end confirmed that this was the car involved in the accident.
The police then interviewed defendant, who initially denied, but later admitted, his prior ownership of the car. Defendant denied being involved in an accident on November 25, 1984, but admitted that he was the only person who drove the car during the period of his ownership. Defendant also admitted being at Rova Farms, a Russian social club, on the evening of November 24, 1985. Rova Farms is located approximately six miles from the site of the accident.

I
The evidence that defendant was the driver of the hit-and-run vehicle which caused the accident resulting in Keith MacCormack's death was overwhelming. Indeed, this point was virtually conceded in defense counsel's summation. Therefore, the only real issues at trial were whether defendant operated his vehicle recklessly by consciously disregarding a substantial and unjustifiable risk that injury or death would result, N.J.S.A. 2C:2-2b(3), and thus was guilty of death by auto, N.J.S.A. 2C:11-5, or recklessly "under circumstances manifesting extreme *563 indifference to human life" and thus was guilty of aggravated manslaughter, N.J.S.A. 2C:11-4a.
Evidence of defendant's intoxication at the time of the accident was relevant to these issues. Our courts have concluded that a jury may infer that an individual who drives while intoxicated is consciously disregarding the risk of an accident and acting with extreme indifference to human life. State v. LaBrutto, 114 N.J. 187, 204 (1989); State v. Bogus, 223 N.J. Super. 409, 419 (App.Div. 1988), certif. den. 111 N.J. 567 (1988). However, the prosecutor lacked direct evidence of defendant's intoxication, because he left the scene of the accident. Therefore, to prove that defendant was intoxicated at the time of the accident, the prosecutor offered testimony by Bernie D'Zurella, the bartender at Rova Farms from 1981 to the end of 1985, that defendant came to Rova Farms just about every weekend until the end of November 1984 and that he always got drunk shortly after arriving. D'Zurella also said that defendant would regularly become loud and obnoxious and that he would be forced to escort him outside the bar.
The trial judge concluded that D'Zurella's testimony that defendant almost always became intoxicated at Rova Farm on weekends was admissible under Evidence Rules 49 and 50 to show a habit. The judge stated:
[W]e're talking about [a] habit of going there on weekends, a habit of drinking on weekends while there and a habit of being drunk on weekends.
This is a particular set of circumstances to which the bartender testified to. It's not a general trait such as would classify it as character type of evidence.... It's a particular setting that he was put into, that is the Rova Farms establishment. It's a particular time. This was a weekend.... And certainly the witness was able to say that every time he was drunk.... I'm satisfied it does constitute habit.
The trial judge also found that the "probative value" of the evidence that defendant regularly became intoxicated at Rova Farms on weekends was not "substantially outweighed by the risk that it will create substantial danger of undue prejudice."
Defendant argues that D'Zurella's testimony as to defendant's regular weekend intoxication at Rova Farms was inadmissible *564 evidence of a character trait. He relies upon the rule which prohibits the prosecutor from introducing evidence of a character trait of the defendant unless the defendant offers evidence of good character. Evid.R. 47. However, "[e]vidence of habit or custom whether corroborated or not is admissible to prove conduct on a specified occasion in conformity with the habit or custom." Evid.R. 49. In addition, "[e]vidence of specific instances of conduct is admissible to prove habit or custom if the evidence is of a sufficient number of such instances to warrant a finding of such habit or custom, Evid.R. 50. Therefore, the admissibility of D'Zurella's testimony regarding defendant regularly becoming intoxicated at Rova Farms on weekends turns on whether that conduct constitutes a character trait or a habit.
Professor McCormick aptly explains the difficulty of distinguishing between character and habit evidence:
The two are easily confused. People sometimes speak of a habit for care, a habit for promptness, or a habit of forgetfulness. They may say that an individual has a bad habit of stealing or lying. Evidence of these "habits" would be identical to the kind of evidence that is the target of the general rule against character evidence. Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness. Habit, in the present context, is more specific. It denotes one's regular response to a repeated situation. If we speak of a character for care, we think of the person's tendency to act prudently in all the varying situations of life  in business, at home, in handling automobiles and in walking across the street. A habit, on the other hand, is the person's regular practice of responding to a particular kind of situation with a specific type of conduct. Thus, a person may be in the habit of bounding down a certain stairway two or three steps at a time, of patronizing a particular pub after each day's work, or of driving his automobile without using a seatbelt. The doing of the habitual act may become semi-automatic, as with a driver who invariably signals before changing lanes.
Evidence of habits that come within this definition has greater probative value than does evidence of general traits of character. Furthermore, the potential for prejudice is substantially less. By and large, the detailed patterns of situation-specific behavior that constitute habits are unlikely to provoke such sympathy or antipathy as would distort the process of evaluating the evidence. [McCormick, Evidence, § 195 at 574-575 (3d ed. 1984) (footnotes omitted)].
See also 1A Wigmore, Evidence, § 92 at 1609 (Tillers rev. ed. 1983).
*565 With respect to the habit of intemperance Professor McCormick comments as follows:
Intemperance seems one of the more potentially prejudicial habits. Partly, the problem stems from the fact that the term may denote a general disposition for excessive drinking (a trait) or a practice of drinking a certain number of glasses of whiskey every night at home (a habit). Thus, the probative force of what is loosely called the habit of intemperance to prove drunkenness on a particular occasion depends on the regularity and details of the characteristic behavior. This may help explain in part the conflicting results when evidence of "habitual intemperance" is brought forward. [McCormick, supra, § 195 at 575-576 n. 8].
The cases in other jurisdictions, especially in federal courts, are generally supportive of McCormick's conclusion that the distinction between habit evidence and evidence of character traits turns upon the regularity and situation-specific nature of the conduct. See, e.g., Loughan v. Firestone Tire & Rubber Co., 749 F.2d 1519, 1522-1524 (11th Cir.1985) (trial court properly admitted evidence of plaintiff tire mechanic's habit of bringing a cooler of beer to work and drinking on the job to show that he was intoxicated at time of accident on which products liability claim was based and hence contributorily negligent); Keltner v. Ford Motor Co., 748 F.2d 1265, 1268-1269 (8th Cir.1984) (trial court did not abuse its discretion in admitting evidence of plaintiff motorist's drinking habits in products liability action against van manufacturer); State v. Wadsworth, 210 So.2d 4 (Fla. 1968) (evidence of defendant's habit of purchasing vodka three times a week properly admitted as corroborating evidence of his intoxication at the time of alleged motor vehicular manslaughter). The court correctly observed in Reyes v. Missouri Pacific Railroad Co., 589 F.2d 791, 795 (5th Cir.1979), that "the probative force of habit evidence to prove intoxication on a given occasion depends on the `degree of regularity of the practice and its coincidence with the occasion.' McCormick on Evidence, § 195 n. 16 (2d ed. 1972)."
We are satisfied that this is one of those relatively uncommon cases in which defendant's intoxication was shown to occur with sufficient regularity in a specific situation to justify its admission *566 as evidence of a habit.[1] D'Zurella testified that defendant came to Rova Farms nearly every weekend and that he invariably became intoxicated shortly after his arrival there. Since the crime occurred on a weekend and defendant admitted to the investigating officers that he was at Rova Farms that evening, the trial court properly admitted evidence of defendant's regularly becoming intoxicated at Rova Farms to prove that defendant was intoxicated at the time of the crime. See Loughan v. Firestone Tire & Rubber Co., supra; cf. Burd v. Vercruyssen, 142 N.J. Super. 344 (App.Div. 1976), certif. den. 72 N.J. 459 (1976) (conduct which was observed "many" times sufficient to establish habit).
Moreover, we find no abuse of discretion in the trial judge's refusal to exclude this evidence under Evidence Rule 4. The evidence that defendant invariably became intoxicated when he went to Rova Farms and consequently was probably intoxicated when he ran his car into the back of the Cote vehicle had substantial probative value with respect to defendant's state of mind at the time of the crime, especially in view of the fact that defendant's flight from the scene deprived the jury of direct evidence of his condition. Furthermore, the bartender's testimony regarding defendant's regular "loud and obnoxious" behavior was highly pertinent to the credibility of his assertion that he had a clear recollection of defendant's habitual pattern of intoxication. See Evid.R. 20. Therefore, while the evidence of defendant's habitual intoxication at Rova Farms undoubtedly *567 cast him in a bad light in the eyes of the jury, this prejudice to defendant did not outweigh the probative value of the evidence. See State v. Stevens, supra, 115 N.J. at 308, quoting State v. West, 29 N.J. 327, 335 (1959) ("[t]hat evidence is shrouded with unsavory implications is no reason for exclusion when it is a significant part of the proof.").
We recognize that D'Zurella's testimony that defendant's acquaintances were a "bunch of bums" and "alcoholics" was objectionable. However, this statement was elicited during defendant's cross-examination of D'Zurella. Furthermore, defense counsel did not make a motion for a mistrial or curative instruction, but rather attempted to use the statement to show D'Zurella's bias against the defendant. Under these circumstances, we are unable to conclude that this isolated comment requires a reversal and remand for a new trial. See State v. Harper, 128 N.J. Super. 270, 277 (App.Div. 1974), certif. den. 65 N.J. 574 (1974) (trial errors which are encouraged or acquiesced in by defense counsel are ordinarily not a basis for reversal).
We also reject defendant's argument that the trial judge's instructions to the jury gave undue emphasis to D'Zurella's testimony and permitted the jury to equate a finding that defendant habitually became intoxicated at Rova Farms with a finding of reckless operation of his vehicle. Defendant's argument is based on the following portion of the court's instructions:
Now you've heard some testimony from ... Mr. D'Zurella concerning the defendant's conduct and his drinking on prior occasions. Now, let me tell you how this testimony may be used by you with regard to the defendant's conduct on November 24th or 25th, the date of the accident here. First of all, as with all testimony, you're free to believe or not believe the testimony of the witness Mr. D'Zurella here. And if you believe the testimony you're going to decide what weight you're going to give to the testimony and the credibility of the witness. If you believe the testimony of Mr. D'Zurella as to the defendant's prior conduct, you may consider such evidence in determining whether the defendant had a habit of acting in the way that the witness indicated; that is always drinking and always intoxicated at Rova Farms on the weekend.
Now, if and only if you determine that the defendant had such a habit, you may then consider that habit in determining whether the defendant acted and *568 was in the same condition on the night of November 24, 1984. On the other hand, if you find that that conduct by the defendant, as testified to by Mr. D'Zurella, the witness, does not bespeak a habit of the defendant, then the testimony may not be used by you in determining how he acted and what condition he was in on November 24, 1984. The crucial question is if there was a habit, did he act in accordance with that particular habit on November 24th, 1984.
We believe that it was appropriate  if not incumbent  upon the trial judge to instruct the jury regarding the use it could make of D'Zurella's testimony. Defendant did not object to the specific language of that instruction at trial and hence it is not grounds for reversal on appeal except upon a showing of plain error. R. 1:7-2. The judge appropriately instructed the jury that it was within their province to assess D'Zurella's credibility, to determine whether his testimony established that defendant had a habit of always becoming intoxicated at Rova Farms on weekends and, if so, whether defendant acted in accordance with that habit on the night of the crime. See Biunno, Current N.J. Rules of Evidence, Comment 1 to Evid.R. 50 (1989). The jury was never told that a finding of the existence of a habit required a finding of recklessness on the night in question, nor could it have inferred this from the instructions the judge gave. Therefore, nothing in these instructions unduly emphasized D'Zurella's testimony or described it in a manner which was prejudicial to defendant.

II
Defendant contends that the trial judge erred by denying his motion for a judgment of acquittal on the charge of aggravated manslaughter, because the State presented insufficient evidence to enable a reasonable jury to conclude that his operation of his vehicle manifested an extreme indifference to human life. Defendant also contends that there was no evidence to support the conclusion that MacCormack's death was caused by the impact of his vehicle.
A motion for a judgment of acquittal must be denied if "viewing the State's evidence in its entirety, be that evidence *569 direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt." State v. Reyes, 50 N.J. 454, 459 (1967). The same standard governs appellate review of the denial of a motion for acquittal. State v. Moffa, 42 N.J. 258, 263 (1964).
An individual is guilty of aggravated manslaughter if he "recklessly causes death under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4a. Thus, the Legislature enumerated two elements for aggravated manslaughter: "(1) a reckless causing of death by the actor and (2) circumstances manifesting extreme indifference to human life." State v. Curtis, 195 N.J. Super. 354, 363 (App.Div. 1984), certif. den. 99 N.J. 212 (1984). A person will be found to have acted "recklessly" if he "consciously disregard[ed] a substantial and unjustifiable risk" that death "will result from his conduct." N.J.S.A. 2C:2-2b(3). Moreover, "[t]he risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." Ibid.; see State v. Curtis, supra, 195 N.J. Super. at 364. And if it is shown that there was probability, rather than a "mere possibility," that death would result, reckless conduct will be found to have been committed under "circumstances manifesting extreme indifference to human life." State v. Bowens, 108 N.J. 622, 638 (1987); State v. Curtis, supra, 195 N.J. Super. at 364-365. The relevant "circumstances" are objective and do not depend on the actor's state of mind. Id. at 364.
In State v. Bogus, supra, we upheld a conviction for aggravated manslaughter based upon evidence that defendant drank "to the point of being severely intoxicated" and then "drove his truck on a main thoroughfare at an excessive rate of speed and *570 proceeded into the intersection in the face of a red light." 223 N.J. Super. at 419. We stated that the jury could conclude that "the decision to drive and the manner in which defendant operated his vehicle indicate a complete disregard for the lives of others." Ibid.
Similarly, the evidence in this case provided sufficient support for a conviction of aggravated manslaughter. As previously discussed, the jury could have inferred from D'Zurella's testimony concerning defendant's habit of becoming intoxicated at Rova Farms on weekends that defendant was highly intoxicated at the time of the accident. The jury also could have concluded from Cote's testimony that his vehicle was struck from behind by defendant's vehicle traveling at a high rate of speed and that defendant did not have control over his vehicle. The fact that defendant fled the scene of the collision, without stopping to determine whether he could render aid to any of the victims, provided additional support for the conclusion that he acted with extreme indifference to human life. Therefore, as in Bogus, the evidence that defendant made a decision to drive while highly intoxicated and drove in an extremely reckless manner was sufficient to support his conviction for aggravated manslaughter. See also State v. Casele, 198 N.J. Super. 462, 472-473 (App.Div. 1985).
Defendant's alternative argument that his motion for a judgment of acquittal should have been granted because there was no evidence that MacCormack's death was caused by the impact of his vehicle is clearly without merit. There was undisputed medical evidence that the victim died as a result of injuries suffered in the automobile accident caused by defendant's driving. If the careless driving of another driver or the victim's failure to wear a seat belt also were contributing causes of the accident and resulting fatality, this would not absolve defendant of responsibility. See N.J.S.A. 2C:2-3c; cf. State v. Smith, 210 N.J. Super. 43, 50-54 (App.Div. 1986).

*571 III
Defendant also contends that the trial judge abused his discretion by refusing to allow him to waive a jury trial.
Prior to the start of trial, defense counsel requested a bench trial. He maintained that the distinction between causing a death by recklessly driving a vehicle required for a conviction of death by auto and recklessly causing death under circumstances manifesting extreme indifference to human life required for a conviction of aggravated manslaughter was so "arcane" that a trial judge would be better equipped than a jury to fairly decide defendant's guilt. In addition, he argued that certain aspects of the trial might inflame a jury and prejudice the defendant i.e., the fact that a 17-year old boy was killed, defendant's flight from the scene and defendant's statement to the police that he had not been involved in the accident. Defense counsel also mentioned the possibility that newspaper reporters might come into the courthouse and photograph the participants.
In denying defense counsel's request, the trial judge placed primary reliance on the fact that he expected that the case would require Miranda as well as other hearings involving complex evidentiary rulings. The judge felt that if he excluded evidence as a result of the hearings, it would be difficult for him to remove inadmissible evidence from his mind, if he were the fact finder. Also, the judge was concerned that the appearance of the fairness might be blemished if he made a ruling that certain evidence was inadmissible and then made a finding of fact that seemed contradictory to his ruling.
It is now well established that a criminal defendant has no constitutional right to waive a trial by jury and be tried by a judge alone. Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); State v. Belton, 60 N.J. 103, 110 (1972); State v. Fiorilla, 226 N.J. Super. 81, 86 (App.Div. 1988); State v. Davidson, 225 N.J. Super. 1, 8 (App.Div. 1988), certif. den. 111 N.J. 594 (1988). Therefore, the decision whether to *572 grant a defendant's motion to waive a jury trial is committed to the sound discretion of the trial judge. State v. Fiorilla, supra, 226 N.J. Super. at 92; State v. Davidson, supra, 225 N.J. Super. at 9; see R. 1:8-1(a).
This court has articulated varying standards to guide a trial judge's decision on a defendant's request for a bench trial. On the one hand, we indicated in State v. Davidson, supra, that the trial judge's discretion "must be exercised after an evaluation of the totality of circumstances, including recognition of the fact that jury trials are ... `the preferred mode of fact-finding in criminal cases.'" 225 N.J. Super. at 9. On the other hand, we stated in State v. Fiorilla, supra, that a defendant's request to waive a jury trial should not be denied unless the trial judge determines that
(1) a defendant has not voluntarily, knowingly and competently waived his constitutional right to jury trial with advice of counsel; or that, (2) the waiver is not tendered in good faith, but as a stratagem to procure an otherwise impermissible procedural advantage; or that, (3) consequential, overriding, demonstrable and articulated reasons exist to require a jury trial, which outweigh the reasons and record provided by the defendant in support of waiver. [226 N.J. Super. at 92].
Even assuming the appropriateness of the Fiorilla standards, we are satisfied that the trial judge did not abuse his discretion in denying defendant's motion to waive a jury trial. The trial judge specifically found that his anticipated exposure to items of evidence that were ultimately ruled inadmissible could detract from the appearance of a fair trial. Thus, he concluded that the integrity of the fact finding process would be best served by a jury trial. Since the trial judge found that his instructions on the law would be sufficient to enable a jury to competently decide the issues involved and that there was nothing about this case which was more inflammatory than any other criminal case involving a victim's death, he made one of the determinations required by Fiorilla for denying a defendant's request for a bench trial, i.e., that "consequential, overriding, demonstrable and articulated reasons exist to require a jury trial, which outweigh the reasons and record provided by *573 the defendant in support of waiver." Id. at 92. The trial judge did not abuse his discretion in making this determination.

IV
Defendant's additional arguments that the trial judge failed to properly define "causation" and erred in not granting a new trial are clearly without merit and do not require discussion. R. 2:11-3(e)(2).

V
Defendant was exposed to a term of imprisonment of between 10 to 20 years for a first-degree crime, N.J.S.A. 2C:43-6a(1), with a presumptive term of 15 years unless the preponderance of aggravating or mitigating factors weighed in favor of a higher or lower term.[2]N.J.S.A. 2C:44-1f(1). In addition, defendant was subject to a parole ineligibility period not to exceed one-half the term imposed, if the court was clearly convinced that the aggravating factors substantially outweighed the mitigating factors. N.J.S.A. 2C:43-6b. Hence, the 20-year term of imprisonment with a 10-year parole ineligibility period imposed on defendant was the maximum term allowable.
In determining whether to deviate from the presumptive sentence for a crime, "the court must decide whether there is a preponderance of aggravating or mitigating factors." State v. Kruse, 105 N.J. 354, 359 (1987); see N.J.S.A. 2C:44-1f(1). How *574 ever, a period of parole ineligibility may be imposed only if the trial judge is "clearly convinced that the aggravating factors substantially outweigh the mitigating factors." N.J.S.A. 2C:43-6b. Under this statutory standard, "[p]eriods of parole ineligibility are the exception and not the rule. They are not to be treated as routine or commonplace." State v. Kruse, supra, 105 N.J. at 359, quoting State v. Martelli, 201 N.J. Super. 378, 382-383 (App.Div. 1985).
Under State v. Roth, 95 N.J. 334, 365-366 (1984), a reviewing court must first determine whether the correct sentencing guidelines have been followed. It must then determine whether there is substantial evidence in the record to support the findings of fact upon which the sentencing court based the application of those guidelines. Finally, it must determine whether the trial court clearly erred by reaching a conclusion that could not have reasonably been made upon a weighing of the relevant factors.
In imposing sentence, the trial judge found the following aggravating factors:
(1) the nature and circumstances of the offenses and defendant's role therein, N.J.S.A. 2C:44-1a(1);
(2) the gravity and seriousness of harm inflicted on the victim, N.J.S.A. 2C:44-1a(2);
(3) the risk that defendant will commit another offense, N.J.S.A. 2C:44-1a(3);
(4) the extent of defendant's prior criminal record and the seriousness of the offenses of which he has been convicted, N.J.S.A. 2C:44-1a(6); and
(5) the need for deterring defendant and others from violating the law, N.J.S.A. 2C:44-1a(9).
The sole mitigating factor identified by the judge was that defendant had been gainfully employed for 21 years prior to his retirement and that, with the exception of several convictions for petty offenses and six prior convictions for driving while under the influence of alcohol, defendant had led a law-abiding life, N.J.S.A. 2C:44-1b(7).
*575 The trial court properly identified the nature and circumstances of the offense as an aggravating factor based upon defendant's failure to stop after he hit the Cote vehicle. The court also properly viewed the risk that defendant would commit another offense and the need for deterrence as additional aggravating factors based on the fact that defendant continued to operate a motor vehicle while intoxicated despite 6 prior convictions for driving while under the influence and a 22 year suspension of his license. However, the court erred in identifying the harm inflicted on the victim and defendant's prior criminal record as aggravating factors. Therefore, we vacate the sentence and remand for resentencing.
When an essential element of a crime is a specific fact, that element may not be used as an aggravating factor to impose a sentence which is longer than the presumptive term or includes a parole ineligibility period. State v. Yarbough, 100 N.J. 627, 645 (1985), cert. den. 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986). Thus, since the death of the victim is an essential element of aggravated manslaughter, that fact could not be considered an aggravating factor. State v. Jarbath, 114 N.J. 394, 404 (1989). Moreover, the trial court erred in treating the emotional trauma to the victim's family caused by his death as an aggravating factor. The wording of N.J.S.A. 2C:44-1a(2), which includes consideration of the victim's power of resistance, indicates that the Legislature intended this aggravating factor to relate to harm inflicted on the "victim of the offense" rather than the victim's relatives.
N.J.S.A. 2C:44-1a(6) provides that "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted" is an aggravating sentencing factor. The trial court erred in finding that defendant's six prior convictions for driving while under the influence of alcohol made this aggravating factor applicable. Driving *576 while under the influence of alcohol is not a crime. State v. Linnehan, 197 N.J. Super. 41 (App.Div. 1984), certif. den. 99 N.J. 236 (1985); see N.J.S.A. 2C:1-4. Moreover, it is not designated a disorderly persons or petty disorderly persons offense. See N.J.S.A. 2C:1-4b. Consequently, driving while under the influence is not an "offense" as defined in N.J.S.A. 2C:1-14k. Therefore, defendant's prior convictions under N.J.S.A. 39:4-50 could not be considered an aggravating factor under N.J.S.A. 2C:44-1a(6), although they could be considered as part of defendant's overall personal history in the same fashion as convictions in municipal court or a juvenile record.[3]See State v. Marzolf, 79 N.J. 167, 177 (1979); State v. Taylor, 226 N.J. Super. 441, 453-454 (App.Div. 1988).
Because the trial judge imposed the maximum term of imprisonment and maximum period of parole ineligibility even though defendant was 64 years old at the time of sentencing and had never before been convicted of an indictable offense, we cannot assume that the judge would have imposed the same sentence even if the incorrectly identified aggravating factors were eliminated from consideration. In fact, we have serious doubts regarding the sustainability of this sentence, especially the parole ineligibility component. However, in view of the Supreme Court's recent admonition that "the exercise of appellate original jurisdiction should not occur regularly or routinely" and that "in the face of deficient sentence, a remand to the trial court for resentencing is to strongly be preferred," State v. Jarbath, supra, 114 N.J. at 411, we conclude that the most appropriate disposition here is to remand for resentencing.
Accordingly, we affirm the conviction but vacate the sentence and remand for resentencing.
NOTES
[1] We note that defendant did not seek to bar the admission of this evidence pursuant to Evid.R. 55 Moreover, defendant refers to Evidence Rule 55 only by way of analogy in his brief filed in this court. Therefore, no issue of admissibility under Evid.R. 55 is before us. In any event, there was no direct evidence that defendant had driven while under the influence of intoxicants on other occasions. In fact, the bartender testified that defendant often slept at Rova Farms over the weekend, which might negate any impression in the mind of the jury that he regularly drove while intoxicated. Consequently, it is unclear whether the requisite foundation could have been established for an argument under Rule 55. See generally State v. Stevens, 115 N.J. 289, 298-304 (1989).
[2] Subsequent to the date on which defendant committed the instant offense, N.J.S.A. 2C:11-4c was amended to provide that a person convicted of aggravated manslaughter "may, notwithstanding the provisions of paragraph (1) of subsection a, of N.J.S. 2C:43-6, be sentenced to an ordinary term of imprisonment between 10 and 30 years...." L. 1986, c. 172, § 1. In addition, N.J.S.A. 2C:44-1f(1) was amended to provide a presumptive term of 20 years for aggravated manslaughter. L. 1986, c. 172, § 4.
[3] The trial court also properly recognized that these convictions were pertinent to the risk that defendant would commit another offense and the need for deterrence.