# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0891-20

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

MIGUEL L. CAMARA,

      Defendant-Appellant.

_____

Submitted February 7, 2022 – Decided March 16, 2022

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 18-11-1451.

Joseph E. Krakora, Public Defender, attorney for appellant (Ruth E. Hunter, Designated Counsel, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Regina M. Oberholzer, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

In this appeal, defendant Miguel L. Camara challenges his Judgment of Conviction (JOC), entered after he pled guilty to first-degree murder, N.J.S.A. 2C:11-3(a)(1), first-degree attempted murder, N.J.S.A. 2C:5-1 and 2C:11-3, and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), raising the following arguments[1]:

POINT I

DEFENDANT DID NOT PROVIDE AN ADEQUATE FACTUAL BASIS FOR ENDANGERING THE WELFARE OF A CHILD BECAUSE HE DID NOT "ACKNOWLEDGE[] [THE] FACTS CONSTITUTING THE ESSENTIAL ELEMENTS OF THE CRIME." STATE v. SAINZ, 107 N.J. 283, 293 (1987).

POINT II

THIS COURT SHOULD REMAND FOR RESENTENCING BECAUSE THE TRIAL COURT DID NOT EXPLICITLY FIND THAT THE AGGREGATE SENTENCE WAS FAIR AS REQUIRED BY STATE v. TORRES, [246 N.J. 246 (2001)]. ADDITIONALLY, THE TRIAL COURT'S FINDINGS OF AGGRAVATING AND MITIGATING FACTORS WERE NOT BASED ON "COMPETENT, REASONABLY CREDIBLE EVIDENCE," STATE v. CASE, 220 N.J. 49, 64 (2014), AND THE COURT IMPROPERLY DOUBLED COUNTED AGGRAVATING FACTOR TWO.

---

[1] We have reorganized defendant's point headings to address the plea issue first.

A-0891-20

Having considered these arguments against the record and applicable legal principles, we affirm defendant's conviction with respect to the endangering the welfare of a child charge, but remand for resentencing for the court to consider the overall fairness of defendant's consecutive sentences in accordance with Torres, 246 N.J. at 270.

I.

On August 21, 2018, defendant went to a restaurant in Long Branch where he saw F.S. (Faye),[2] seated at a table with her then-eighteen-year-old son, M.S.F. (Max), her then-five-year-old daughter, L.S.[3] (Lucy), and M.M. (Michael), a man with whom Faye was residing. Defendant was formerly in a relationship with Faye, which she had recently ended.

Upon seeing Faye, defendant became angry, left the restaurant, and retrieved a handgun and restraining order Faye had obtained against him. He then returned to the restaurant, put the restraining order on Faye's table, pointed the gun at Michael's head, and pulled the trigger killing him. He then pointed the gun at Faye and pulled the trigger. Fortunately, the gun jammed and did not

---

[2]  We use initials and pseudonyms to protect the privacy and preserve the confidentiality of the victim. R. 1:38-3(c)(6), (9), (12).

[3]  The record contains mixed references to Faye's daughter, sometimes identifying her as L.C.F. or L.C.

A-0891-20

fire. Defendant then turned the gun on himself, but Max and a bystander intervened, and a struggle ensued. Police arrived and joined the struggle. After defendant was disarmed, he grabbed one of the officer's guns and attempted unsuccessfully to wrestle it away, but the police managed to subdue him.

A Monmouth County grand jury charged defendant with eight offenses: 1) first-degree murder, (count one); 2) first-degree attempted murder, (count two); 3) fourth-degree aggravated assault by pointing a firearm, N.J.S.A. 2C:12-1(b)(4) (count three); 4) second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count four); 5) second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count five); 6) third-degree endangering the welfare of a child, (count six); 7) second-degree disarming a law enforcement officer, N.J.S.A. 2C:12-11(a) (count seven); and 8) fourth-degree contempt, N.J.S.A. 2C:29-9(b) (count eight).

On July 14, 2020, defendant pled guilty to count one, murder, count two, attempted murder, and count six, endangering the welfare of a child. In exchange, the State agreed to dismiss the remaining charges and recommend a thirty-year sentence without parole eligibility on count one, a ten-year sentence subject to a No Early Release Act, N.J.S.A. 2C:43-7.2, eighty-five percent parole disqualifier on count two, and a five-year sentence on count six. The

A-0891-20

agreement called for the state to recommend all of defendant's sentences to run consecutively.

In providing a factual basis for his guilty plea, defendant admitted to shooting Michael with the intent to kill him and pointing the gun at Faye and pulling the trigger with the intent to kill her. He also acknowledged that five-year-old Lucy was at the table and saw him shoot Michael and attempt to shoot Faye. Finally, defendant stated that by shooting Michael, attempting to shoot Faye, attempting to shoot himself, and engaging in the subsequent physical altercation he "put [Lucy] in danger."

Defense counsel submitted a sentencing memorandum in which he argued that application of aggravating factor two, "[t]he gravity and seriousness of harm inflicted on the victim, including whether . . . the defendant knew or reasonably should have known that the victim . . . was particularly vulnerable or incapable of resistance due to . . . extreme youth," N.J.S.A. 2C:44-1(a)(2), would constitute improper "double counting." Defense counsel argued further that mitigating factor seven, "[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense," N.J.S.A. 2C:44-1(b)(7), should be applied and aggravating factor six, "[t]he extent of the defendant's prior

criminal record and the seriousness of the offenses of which the defendant has been convicted," N.J.S.A. 2C:44-1(a)(6), should be rejected because defendant "had a single contact with the Family Courts" and "ha[d] no prior municipal or indictable convictions or arrests."

The State requested that the court apply aggravating factor one, "[t]he nature and circumstances of the offense, and the role of the actor in committing the offense, including whether or not it was committed in an especially heinous, cruel, or depraved manner," N.J.S.A. 2C:44-1(a)(1), two, three, "[t]he risk that defendant will commit another offense," N.J.S.A. 2C:44-1(a)(3), six, nine, "[t]he need for deterring defendant and others from violating the law," N.J.S.A. 2C:44-1(a)(9), fourteen, "[t]he offense involved an act of domestic violence . . . committed in the presence of a child under 16 years of age," N.J.S.A. 2C:44-1(a)(14), and fifteen, "[t]he offense involved an act of domestic violence . . . and the defendant committed at least one act of domestic violence on more than one occasion," N.J.S.A. 2C:44-1(a)(15).

The State also argued against the application of mitigating factor seven. While it noted that defendant had "no record" it asserted that the "[t]he only yardstick that we have is from his time in the United States," which spanned

6

only "two short years" at the time of defendant's offenses. As such, the State argued mitigating factor seven "cannot adequately . . . be found."

After considering the parties' arguments and submissions, the judge sentenced defendant to an aggregate sentence of forty years. In doing so, the judge deviated in defendant's favor from the negotiated plea agreement by ordering the sentence for count six (the child endangerment count) to run concurrently to counts one and two. He found applicable on all three counts aggravating factor three, aggravating factor nine, and mitigating factor seven. He also deemed applicable as to counts two and six, aggravating factors two, fourteen, and fifteen.

In applying aggravating factor two, the judge first explained that "under cases like [State v. Radziwil, 235 N.J. Super. 557 (App. Div. 1989), aff'd, 121 N.J. 527 (1990)]," "the harm inflicted on the victim is not limited to the actual victim of the offense itself" and "can fall onto relatives and people . . . in the victim's periphery," and found that "there [was] harm inflicted on not just the victims in this case, but their . . . loved ones." He also found that "with respect to [c]ount [two] and [c]ount [six], the victims in this case were particularly vulnerable." He explained that Faye was vulnerable because she "had no other form of protection from this defendant other than the final restraining order" and

A-0891-20

that Lucy was vulnerable because of her "extreme youth," as "[s]he was five years old at the time."

In applying mitigating factor seven, the judge explained that defendant had "no prior criminal record," however he "place[d] very, very minimal weight" on that factor. He also rejected the application of aggravating factor six based on defendant's lack of a prior criminal record.

In deciding to apply the sentences for count one and two consecutively and the sentence for count six concurrently, the judge considered the factors enumerated in State v. Yarbough, 100 N.J. 627 (1985). He first explained that "to sentence . . . concurrently for two separate homicidal acts; one successful, and one not successful, would essential[ly] be giving [defendant] a free crime." With regard to counts one and two, the judge also reasoned that defendant had a "completely separate body of intent, a completely separate intent to kill a separate victim" and thus the offenses constituted "completely separate criminal act[s]." He found count six distinguishable because he "[could not] conclude that [defendant] had a separate modicum of intent with respect to the victim [child] in [c]ount [six]." This appeal followed.

In his first point, defendant argues that the court committed error in accepting his plea to count six because he failed to provide a sufficient factual basis to support his guilt to endangering Lucy's welfare, relying on Sainz, 107 N.J. at 293. He explains that he only admitted to placing Lucy "in danger," but that he "never testified that he 'caused' the child 'harm that would make the child an abused or neglected child' as defined under N.J.S.A. 9:6-1," that "the unlawful acts he committed in the child's presence 'may tend to debauch or endanger the morals' of the child," or "that he caused Lucy 'unnecessary pain and suffering, whether mental or physical.'" Defendant's arguments are without merit.

We review questions regarding whether a plea was supported by an adequate factual basis de novo. State v. Tate, 220 N.J. 393, 403-04 (2015) ("An appellate court is in the same position as the trial court in assessing whether the factual admissions during a plea colloquy satisfy the essential elements of an offense."). "[I]f a factual basis has not been given to support a guilty plea, the analysis ends and the plea must be vacated." Id. at 404.

"[A]t a plea hearing, a judge must be satisfied that the defendant has given a factual account that makes him guilty of the crime." Id. at 405 (citing R. 3:9-

2). Under Rule 3:9-2, "a court shall not accept a guilty plea 'without first questioning the defendant personally, under oath or by affirmation, and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea.'" Ibid. (quoting R. 3:9-2). Thus, before accepting a guilty plea, a defendant must "acknowledge[] . . . facts constituting the essential elements of the crime." Sainz, 107 N.J. at 293. To that end, "[t]he factual basis for a guilty plea can be established by a defendant's explicit admission of guilt or by a defendant's acknowledgment of the underlying facts constituting essential elements of the crime." State v. Gregory, 220 N.J. 413, 419 (2015).

A court accepting a guilty plea need not "follow a prescribed or artificial ritual." State ex rel. T.M., 166 N.J. 319, 327 (2001). "To the contrary, because different criminal charges and different defendants require courts to act flexibly to achieve constitutional ends, a factual basis, established . . . through direct admission by the defendant, should be examined in light of all surrounding circumstances and in the context of an entire plea colloquy." Ibid.

Third-degree child endangerment under N.J.S.A. 2C:24-4(a)(2) occurs when "[a]ny person [other than a caretaker] . . . causes the child harm that would make the child an abused or neglected child as defined in R.S. 9:6-1, R.S. 9:6-

3, and section 1 of P.L.1974, c. 119 (C.9:6-8.21))." The statutory elements the State must prove beyond a reasonable doubt are that the victim was a child, defendant caused the victim harm that would make him abused or neglected, and that defendant knew the conduct would make the child abused or neglected. N.J.S.A. 2C:24-4(a)(2); see also Model Jury Charge (Criminal), "Endangering the Welfare of a Child, Abuse or Neglect (Third Degree) (N.J.S.A. 2C:24-4(a)(2))" (rev. March 9, 2015).

We have previously held that "[t]he intent [of N.J.S.A. 2C:24-4(a)] is to incorporate the crime now defined in N.J.S.[A.] 9:6-3[4] without substantial change except for the penalty provisions." State v. Demarest, 252 N.J. Super. 323, 328 (App. Div. 1991) (first two alterations in original) (quoting 2 Final Report of the New Jersey Criminal Law Revision Commission, 259 (1971)). "The method chosen by the Commission to accomplish this objective was to incorporate by reference the definitions of 'abused[,]' 'abandonment,' 'cruelty[,]' and 'neglect' contained in N.J.S.A. 9:6-1, which also are incorporated in N.J.S.A. 9:6-3." Ibid.; see also Model Jury Charge (Criminal), "Endangering the Welfare

---

[4] N.J.S.A. 9:6-3 provides in part "any person who shall abuse, be cruel to or neglectful of any child shall be deemed to be guilty of a crime of the fourth degree."

of a Child, Abuse or Neglect (Third Degree) (N.J.S.A. 2C:24-4(a)(2))" (rev. March 9, 2015) (including definition of cruelty to a child).

N.J.S.A. 9:6-1's definition of "[c]ruelty to a child" includes "(b) inflicting upon a child unnecessary suffering or pain, either mental or physical; . . . (d) any willful act of omission or commission whereby unnecessary pain and suffering, whether mental or physical, is caused or permitted to be inflicted on a child;" and "(e) . . . exposing a child to unnecessary hardship, fatigue or mental or physical strains that may tend to injure the health or physical or moral well-being of such child."

"A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence." N.J.S.A. 2C:2-2(b)(1). A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result. N.J.S.A. 2C:2-2(b)(2).

Here, defendant provided an adequate factual basis to support his guilty plea to endangering the welfare of a child. During his plea, defendant admitted that he intentionally shot and killed Michael and attempted to kill Faye. He also admitted that five-year-old Lucy was present and that "shooting [Michael], . . .

trying to shoot [Faye], trying to shoot [himself]" and engaging in the struggle that ensued all put Lucy "in danger." Those admissions fully support that defendant endangered Lucy under subsections (b), (d), and (e) of N.J.S.A. 9:6-1's definition of child cruelty. Indeed, it is beyond question that by firing a weapon in close proximity to Lucy, defendant subjected her to substantial mental and emotional anguish. Lucy not only witnessed the murder of Michael, but also the attempted murder of her mother, the attempted suicide of defendant, and the subsequent altercation involving her brother and the police whereby defendant was restrained. Contrary to defendant's argument, the fact that defendant did not admit at his plea hearing to actually causing Lucy harm is immaterial because defendant's admission to placing Lucy "in danger" combined with his factual admissions related to his murder and attempted murder offenses fully supported his guilty plea to endangering the welfare of a child. See T.M., 166 N.J. at 327; N.J.S.A. 9:6-1.

III.

In defendant's second point he asserts multiple bases in support of his argument that a new resentencing hearing is required, first arguing that the judge erred in analyzing and applying the applicable sentencing factors. Specifically, he claims the judge improperly relied upon Radziwil, 235 N.J. Super. 557 for

A-0891-20

the proposition that aggravating factor two can be supported by harm suffered by the victim's relatives and "people . . . in the victim's periphery." Second, defendant contends that by relying on Lucy's youth in finding aggravating factor two applicable to count six, the judge "double counted" "because an element of the endangering the welfare of a child offense is that [Lucy] was a child." Third, defendant asserts the judge erred by placing minimal weight on mitigating factor seven because he failed to provide an explanation and "inconsistently but appropriately rejected aggravating factor [six] because of defendant's lack of a criminal record."

Defendant also argues that a remand is warranted for reconsideration of the imposition of consecutive sentences because the judge "did not explicitly find that the aggregate sentence was fair," "as required by our Supreme Court's recent decision in [Torres, 246 N.J. 246]."

We disagree that the judge erred in analyzing and applying sentencing factors but agree that a limited remand is necessary for the judge to provide "[a]n explicit statement, explaining the overall fairness" of the sentences imposed. Id. at 268.

We employ a deferential standard when reviewing a trial court's sentencing decision. State v. Grate, 220 N.J. 317, 337 (2015); Fuentes, 217 N.J.

<span>A-0891-20</span>

57, 70 (2014). We must affirm a sentence unless: 1) the trial court failed to follow the sentencing guidelines; 2) the court's findings of aggravating and mitigating factors were not based on competent and credible evidence in the record; or 3) "the [court's] application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience." Fuentes, 217 N.J. at 70 (second alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

We assess a trial judge's finding of "aggravating and mitigating factors to determine whether they 'were based upon competent credible evidence in the record.'" State v. Bieniek, 200 N.J. 601, 608 (2010) (quoting Roth, 95 N.J. at 364-65). We are "not to substitute [our] assessment of aggravating and mitigating factors for that of the trial court." Ibid.

"Elements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime." State v. Lawless, 214 N.J. 594, 608 (2013). To use those elements in formulating the aggravating factors would result in impermissible double-counting. State v. Kromphold, 162 N.J. 345, 353 (2000); see also Fuentes, 217 N.J. at 74-75 (holding that sentencing courts "must scrupulously avoid 'double-counting' facts that establish the elements of the relevant offense"). "A court, however, does

not engage in double-counting when it considers facts showing defendant did more than the minimum the State is required to prove to establish the elements of an offense." State v. A.T.C., 454 N.J. Super. 235, 254-55 (App. Div. 2018); see also Fuentes 217 N.J. at 75 ("A sentencing court may consider 'aggravating facts showing that [a] defendant's behavior extended to the extreme reaches of the prohibited behavior.'" (alteration in original) (quoting State v. Henry, 418 N.J. Super. 481, 495 (Law. Div. 2010))).

"[T]rial judges have discretion to decide if sentences should run concurrently or consecutively." State v. Miller, 205 N.J. 109, 128 (2011); see N.J.S.A. 2C:44-5(a). Judges are permitted to impose consecutive sentences where multiple sentences of imprisonment are imposed and after considering the Yarbough factors. See Yarbough, 100 N.J. at 643-44. "When a sentencing court properly evaluates the Yarbough factors in light of the record, the court's decision will not normally be disturbed on appeal." Miller, 205 N.J. at 129.

If the court "fails to give proper reasons for imposing consecutive sentences at a single sentencing proceeding," however, "ordinarily a remand should be required for resentencing." State v. Carey, 168 N.J. 413, 424 (2001). In Torres, our Supreme Court recently held "[a]n explicit statement, explaining

the overall fairness of a sentence imposed on a defendant for multiple offenses . . . is essential to a proper Yarbough sentencing assessment." 246 N.J. at 268.

Here, we are satisfied that the judge properly exercised his discretion when analyzing and applying the sentencing factors. First, the judge provided adequate support for the application of aggravating factor two on counts two and six by explaining that the direct victims of those offenses, Faye, and Lucy, were "particularly vulnerable." In reaching this conclusion, we acknowledge that the judge incorrectly stated the law when he stated that "under cases like Radziwil, [235 N.J. Super 557]," "the harm inflicted on the victim is not limited to the actual victim of the offense itself" and "can fall onto relatives and people . . . in the victim's periphery." See id. at 575 ("The wording of N.J.S.A. 2C:44-1a(2) . . . indicates that the Legislature intended this aggravating factor to relate to harm inflicted on the 'victim of the offense' rather than the victim's relatives."); see also Lawless, 214 N.J. at 614 ("[F]or purposes of aggravating factor two, the 'victim' constitutes any person who was directly harmed by the defendant in the exact offense of which he or she stands convicted."). We are satisfied, however, that the judge appropriately focused on harm to the direct victims of counts two and six, and therefore, his incorrect statement of law on this discrete subject was inconsequential.

17

Second, the judge's reliance on Lucy's age in applying aggravating factor two to defendant's endangering offense did not constitute "double-counting" because endangering the welfare of a child requires the victim to be under the age of eighteen, whereas Lucy was significantly younger at age five at the time of the offense. N.J.S.A. 2C:24-4(b)(1); see A.T.C., 454 N.J. Super. at 254-55; State v. Taylor, 226 N.J. Super. 441, 453 (App. Div. 1988) (considering a four-year-old sexual assault victim's "extreme youth" was a proper aggravating factor when the statute covered victims under thirteen years old).

Third, while it would have been more appropriate for the judge to explain his reasoning for affording minimal weight to mitigating factor seven, his failure to do so does not rise to the level of an abuse of discretion. When the entire record is considered, it is clear the judge appropriately afforded mitigating factor seven minimal weight because defendant had only been in the United States for two years, and therefore, his lack of a criminal record provided a negligible basis for mitigation. See Case 220 N.J. at 65 ("When the aggravating and mitigating factors are identified, supported by competent, credible evidence in the record, and properly balanced, we must affirm the sentence and not second-guess the sentencing court . . . .").

A-0891-20

Further, contrary to defendant's claim, nothing about the imposition of mitigating factor seven and rejection of aggravating factor six is inconsistent. Indeed, aggravating factor six requires a criminal record, which defendant did not have, whereas mitigating factor six depends on the lack of criminal activity for a substantial period of time, which existed here during the approximately two years that defendant was a United States resident. In any event, defendant's sentence does not "shock [our] judicial conscience," especially considering that the judge largely adhered to the plea agreement, differing only by imposing defendant's sentence on count six concurrent to those imposed on counts one and two. Fuentes, 217 N.J. at 70 (quoting Roth, 95 N.J. at 364-65); see Sainz, 107 N.J. at 294 ("[a] presumption of reasonableness . . . attaches to criminal sentences imposed on plea bargain defendants").

We agree with defendant, however, that a remand is necessary because in deciding to impose consecutive sentences, the judge failed to make an "explicit statement explaining the overall fairness" of defendant's aggregate sentence. Torres, 246 N.J. at 268. The scope of the remand, however, should be limited to an analysis of the overall fairness of the aggregate sentence imposed, rather than constituting a full resentencing. See State v. Randolph, 210 N.J. 330, 353 (2012) (explaining that a remand "for a statement of reasons on the record for

the imposition of consecutive sentences" is limited in scope and excludes reconsideration of sentencing factors).

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION