142 N.J. Super. 344 (1976)
361 A.2d 571
HOWARD BURD, JR., ADMINISTRATOR AD PROSEQUENDUM OF DAVID BURD, DECEASED, AND HOWARD BURD, JR., GENERAL ADMINISTRATOR OF THE ESTATE OF DAVID BURD, DECEASED, AND HOWARD BURD, JR., AND DOLORES BURD, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
FERNAND J. VERCRUYSSEN AND HONORE VERCRUYSSEN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 12, 1976.
Decided June 10, 1976.
*346 Before Judges ALLCORN, KOLE and ARD.
Messrs. Kraft and Hughes, attorneys for the appellants (Mr. Mark F. Hughes, Jr. on the brief).
Messrs. O'Donnell, Leary and D'Ambrosio, attorneys for the respondents (Mr. Donald S. McCord, Jr. on the brief).
The opinion of the court was delivered by ARD, A.J.S.C., Temporarily Assigned.
Plaintiff Howard Burd, Jr., as general administrator and as administrator ad prosequendum of the estate of his son David, appeals from a judgment for defendant in an action for damages for decedent's injuries and wrongful death on the issue of liability and the trial judge's subsequent denial of a new trial. Howard Burd, Jr., and his wife Dolores also appeal from an order granting summary judgment to defendants on their individual claims of damage for mental suffering and loss of consortium contained in the third and fourth counts of the complaint.
The verdict was entered by the trial judge upon the jury returning special written findings determining the defendant *347 driver guilty of negligence and the decedent pedestrian guilty of contributory negligence.[1]
The accident occurred on May 13, 1971 between 9:00 and 9:15 P.M. on Willow Grove Street at or near Hatchery Road, Hackettstown, New Jersey. Willow Grove Street runs north and south and Hatchery Road proceeds downhill in an easterly direction from Willow Grove Street to the Musconetcong River. Willow Grove Street measured 20 feet in width in addition to blacktop shoulders on each side approximately five feet in width. The street was divided by a solid yellow line in the center of the road. There were no sidewalks in the area. Hatchery Road measured approximately 19 feet wide at the Willow Grove Street intersection. There were no crosswalk lines in Willow Grove Street at or near Hatchery Road. Private residences lined Willow Grove Street on both sides, and there was a lighted street light on the east side of Willow Grove Street at the Hatchery Road intersection and another approximately 400 feet north on Willow Grove Street. Willow Grove Street was governed by two signs indicating a speed limit of 25 miles an hour. One of the signs was just south of the impact area.
At about 7 P.M. on May 13, 1971 decedent, a 15-year-old boy, left his home on Willow Grove Street to fish at the bottom of Hatchery Road. The Burd residence was on the westerly side of Willow Grove Street and north of the Hatchery Road intersection. After fishing approximately two hours he walked up Hatchery Road accompanied by 14-year-old Ronald Facezekas. Upon reaching the easterly side of Willow Grove Street they parted, with Ronald turning left in a southerly direction and decedent turning right to proceed in a northerly direction, crossing the mouth of Hatchery Road on the easterly side of Willow Grove Street. As Ronald proceeded *348 to his home, which faced Willow Grove Street on the southeast corner of the Hatchery Road intersection, he saw two cars heading north on Willow Grove Street, about five feet apart and "going pretty fast." He then heard a light thump but proceeded into his driveway. He did not see the accident and apparently was unaware it had occurred until later.
Defendant driver, alone in his vehicle, was proceeding north on Willow Grove Street at a speed he alleged to be 25 to 30 miles an hour. He testified he did not see decedent but heard the noise of an impact to his left front and "found my car headed for a tree on the opposite side of the road where I shouldn't have been traveling." He came to a stop on the southbound lane with the "nose pointed completely off the road." Decedent's body was found on the southbound shoulder of the road about 12 feet south of a catch basin in front of the Burd residence. The police testified the body was about 142 feet north of the street light at Hatchery Road and 270 feet south of where defendant stopped his car. An unlighted lantern (which went out while decedent was fishing) was found in a badly damaged condition under a hedge on the westerly side of Willow Grove Street 140 feet south of decedent's body. Ronald Facezekas testified that decedent was carrying the lantern at the time they parted. In visualizing the three locations, one can draw a line from the lantern to the body to the vehicle of approximately 410 feet along the westerly shoulder of Willow Grove Street.
Rudolph Vercruyssen testified he was alone in another car following his brother as they proceeded north on Willow Grove Street. He did not see decedent or the impact but observed two white objects fly over his brother's car. He subsequently identified these objects to be decedent's sneakers, located slightly south of the body in the middle of the street. Rudolph surmised that his brother had hit something upon observing Fernand's car behave erratically by turning clockwise and then counter-clockwise, heading off the road *349 and stopping. Rudolph pulled to a stop on the right side of the road across from decedent.
There was no eyewitness testimony as to the location of where the boy was struck or his path of travel immediately prior to the accident.
During the trial plaintiffs, relying on Evid. R. 49, made an offer of proof through the testimony of Burd as to his son's habit and custom of exercising care while crossing Willow Grove Street. Burd testified:
He always looked for oncoming traffic. He looked in both directions, and he always walked facing the traffic. * * * By facing the traffic? I mean that he walked on the shoulder facing the traffic coming toward him, so that he would be looking at the cars as they are coming toward him.
He further testified:
Q How many times did you see him come up Hatchery Road to Willow Grove and cross to the house?
A Many times. It was a frequent place. The boys all played football, basketball, and fished there.
Q When would you see him do this?
A When would I see him? At various times. Many times I went with him.
Later, in response to questioning by the judge, Burd reaffirmed his observations of his son crossing the street:
Q How many times did you honestly observe your son coming up and coming across the street?
A I say I observed him many times because, as I say, I not only observed him coming back and going down, I have three boys and a daughter that did the same thing.
After hearing argument concerning the admissibility of this testimony the judge sustained the objection of the defense and ruled that
All of this is not only insufficient, because of the fact that there was not a sufficient number of times to demonstrate performance other than the times he was actually with him and the few times *350 he observed him. The Court will not permit the admission of that testimony, in any event, whether given by Mr. Burd or anyone else. And the same thing, both to the habit of looking and the habit of walking against the traffic. [Emphasis supplied]
Subsequently an offer of proof was made through the testimony of decedent's mother, Dolores Burd. Her testimony indicated observations of her son's crossing habits over a period of seven years. The judge reserved his decision on this ruling but the matter was never subsequently determined. Neither counsel nor the judge mentioned the offer of proof or the reserved decision during the remainder of the trial.
David Schmidt, an expert in the science of physics, was called by plaintiffs to render expert opinions concerning the reconstruction of the accident. His testimony was intended to be supplemented by a series of photographic slides designed to illustrate and clarify his testimony. Although the slides had been used in the prior municipal hearing concerning criminal charges against the defendant driver arising out of this accident, and defense counsel had a transcript of the hearing, plaintiffs had failed to supply the slides to defendant in response to interrogatories requesting all reports of experts. The trial judges considered the slides to be reports within the meaning of R. 4:17-4, and as a sanction precluded plaintiffs' expert from testifying.
The grounds of appeal urged may be generally stated as follows: (1) error in the failure of the trial judge to allow evidence of habit or custom; (2) the suppression of plaintiffs' expert testimony; (3) the judge's refusal to admit defendant's municipal court conviction for reckless driving as conclusive proof of defendant's negligence; (4) the judge's refusal to eliminate contributory negligence as an issue in the case; (5) error in the charge as to standard of care for pedestrians and motorists; (6) the judge's failure to admit photographs of decedent after the accident, and (7) his refusal to allow the Burds' cause of action for mental anguish *351 and distress and Mr. Burd's cause of action for the resultant loss of consortium of his wife.
Plaintiffs' first contention is that the testimony of the Burds concerning their son's habit and custom of making observations before crossing Willow Grove Street and walking against traffic should have been admitted. We agree.
Evid. R. 49, relating to habit or custom to prove specific conduct, provides:
Evidence of habit or custom whether corroborated or not is admissible to prove conduct on a specified occasion in conformity with the habit or custom.
In the comments on this rule by the State Rules of Court Review Commission, we find language which supports the application of this rule to the facts of this case:
Rule 49 makes evidence of habit or custom admissible to prove conduct on a specified occasion in conformity with the habit or custom. The relevance of habitual behavior to an understanding of a man's conduct on a specified occasion is substantially greater than the relevance of his general character traits for care or skill. Thus, evidence of habitual careful behavior, is admissible to prove that a person acted carefully on a particular instance, while evidence of a general character trait for carefulness is not. * * *
Habit is defined in McCormick, Evidence, § 162 (1954), as describing one's regular response to a repeated specific situation. Although many jurisdictions do not have as broad an evidence rule concerning habit and custom, most jurisdictions allow this evidence where there are no competent eyewitnesses to the accident. See Annotation, "Admissibility of evidence of habit, customary behavior, or reputation as to care of pedestrian on question of his care at time of collision with motor vehicle giving rise to his injury or death", 28 A.L.R.3d 1293 (1969).
With the pedestrian dead and no eyewitness testimony to describe his observations and position on the road, this type of evidence was critical to plaintiffs' case. It was probative *352 of the alleged negligence of defendant driver and of utmost importance in disputing defendant's affirmative defense of contributory negligence.
The trial judge ruled Burd's observations were insufficient; however, his ruling also indicated a substantive objection to this kind of evidence. In either event, he was in error; the rule allows this type of testimony and the foundation testimony of Burd more than satisfies Evid. R. 50 which requires its admission "if the evidence is of a sufficient number of such instances to warrant a finding of such habit or custom."
Mrs. Burd's testimony should also have been permitted. Unquestionably, her opportunity to observe over a seven-year period cannot be questioned with respect to laying a proper foundation for admission of habit evidence. Absent an express withdrawal of the offer, the trial judge was under an obligation to decide its admissibilty. The failure of trial counsel to remind the judge of the reserved decision is not condoned; however, we do not deem it a waiver of his right to a ruling by the court. It should also be recalled that the judge had already ruled he would not admit this testimony "in any event."
Our ruling on the admissibility of habit testimony will require a new trial. To assist the trial court, we will determine the remaining allegations of error.
With respect to the excluded expert testimony, plaintiffs now have ample opportunity to submit timely supplemental discovery, thereby avoiding the sanctions incurred in the first trial. The necessity for expert testimony and the qualifications of plaintiffs' expert and whether the evidence was otherwise admissible were not ruled upon below and are not issues raised in this appeal.
In another contention of error, plaintiffs allege that the reckless driving conviction of defendant (pursuant to N.J.S.A. 39:4-96) in the Hackettstown Municipal Court, which arose from the same incident, can be used as the basis for invoking the doctrine of collateral estoppel. It is argued *353 that defendant's municipal court conviction is conclusive of defendant's negligence in the civil suit.
The contention is not valid. Evid. R. 63(20) reads as follows:
In a civil proceeding, except as otherwise provided by court order on acceptance of a plea, evidence is admissible of a final judgment against a party adjudging him guilty of an indictable offense in New Jersey or of an offense which would constitute an indictable offense if committed in this State, as against that party to prove any fact essential to sustain the judgment.
In commenting on this rule the State Rules of Court Review Commission specifically points out that the rule excludes "disorderly persons violations, motor vehicle violations, or ordinance violations." N.J.S.A. 39:4-96 is not an indictable offense. The judgment of conviction is not evidential in this case. Since the municipal conviction is inadmissible to prove the facts underlying the conviction, it follows logically that the nonindictable conviction may not be used as conclusive proof of defendant's negligence or reckless indifference to the consequences of his conduct. Compare Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 396-397 (1970).
Parenthetically, if the evidence in the retrial warrants a factual basis for finding that defendant driver was guilty of recklessness or wanton misconduct, the jury should be instructed that in the event of such a finding the rule that contributory negligence is a bar to recovery does not apply. Tabor v. O'Grady, 61 N.J. Super. 446, 450-452 (App. Div. 1960).
Plaintiffs' argument that the trial judge erred in charging the jury the law of contributory negligence is without merit. Our examination of the record indicates there was sufficient evidence from which a legitimate inference might be drawn that decedent's conduct contributed to the happening of the accident. A jury may make findings of fact not only from the evidence but from the reasonable *354 inferences drawn therefrom. In Jones v. Strelecki, 49 N.J. 513 (1967), the court, in considering a motor vehicle-pedestrian death action very similar to the instant case, analyzed all the physical circumstances surrounding the accident and concluded it was proper to submit the question of decedent's contributory negligence to the jury. A jury might well conclude decedent made improper observations when crossing a straight, level roadway with no obstructions. The testimony was uncontradicted that defendant's headlights were on, and the jury could conclude his vehicle was observable a substantial distance from the point of crossing.
The trial judge did not err in refusing to accept plaintiffs' request to charge that defendant had a duty to swerve or take other evasive action. Defendant driver admitted not seeing decedent. The requested charge would have no application to the undisputed facts of the case. Furthermore, the trial judge properly outlined the duty of care of a motorist traversing a roadway.
Equally without merit is plaintiffs' allegation that the court erred in charging the duties of a pedestrian under N.J.S.A. 39:4-34. The statute has direct application to the facts asserted in the instant case. The Motor Vehicle Act, N.J.S.A. 39:4-32 through 39:4-37.1, establishes statutory rights, duties and obligations of pedestrians and motorists. The appropriate statute should be outlined for the jury when applicable to facts they might find from the evidence. Alternative instructions should be given where optional facts may be found from the evidence. It is also suggested that jury instructions concerning an alleged violation of the Traffic Act should be consistent with the holding in Phillips v. Scrimente, 66 N.J. Super. 157 (App. Div. 1961).
A further argument made by plaintiffs is that the judge's refusal to admit photographs of the condition of decedent's body for the purpose of inferring the speed of the car was reversible error. The judge, in evaluating the *355 probative value of the photographs, indicated in his ruling that only part of the body was visible in the photographs and under the circumstances any conclusions drawn from an examination of the photographs would be speculative. He determined that the potential for prejudice outweighed the possible probative value of the photographs. This was a proper exercise of his discretion. Evid. R. 4; State v. Walker, 33 N.J. 580, 596 (1960); Lamendola v. Mizell, 115 N.J. Super. 514, 525-526 (Law Div. 1971); Gambrell v. Zengel, 110 N.J. Super. 377, 380-381 (App. Div. 1970).
In addition to the allegations of trial error, plaintiffs also appeal the entry of summary judgment in favor of defendant as to plaintiffs' individual claims for mental distress and loss of Mrs. Burd's services caused by their son's death.
The testimony is undisputed that the parents did not observe their son's death. However, shortly after the accident Mrs. Burd was on the scene and was unable to identify the body until she lifted a hand and observed a scar on the wrist. The injuries were so gross she was unable to identify him otherwise. Understandably, this macabre incident contributed to and exacerbated her shock and grief over her son's death. Mr. Burd's claim is for damages caused by the loss of consortium of his wife due to her distress as well as his own personal mental distress.
It is clear that a deceased's parents have no right to sue for mental anguish under the wrongful death act. Russell v. Salem Transportation Co., Inc., 61 N.J. 502, 508 (1972); McStay v. Przychocki, 7 N.J. 456, 460 (1951). Plaintiffs, however, also assert an individual common law cause of action in their own right for the mental anguish. The damage claims of the parents in this case result from the emotional and mental distress incurred from their son's death and the viewing of his mangled body lying in the street. The Supreme Court, in Falzone v. Busch, 45 N.J. 559 (1965) held the "no impact" rule no longer the law of New Jersey. Although Falzone broadened the scope of *356 the rule, it did set limits to "no impact" claims. The court held that impact is not a prerequisite for recovery where fright causes substantial bodily injury or sickness; however, it conditioned the right to recovery to "fright from a reasonable fear of immediate personal injury * * *." (At 569). Mrs. Burd's mental shock did not result from fear of personal injury to herself but rather was due to her son's untimely death and the circumstances of his identification. See also Caputzal v. The Lindsay Co., 48 N.J. 69 (1966). Falzone and Caputzal represent the outer limits of the "no impact" rule and as such excludes plaintiffs' claims, which were properly dismissed by the entry of summary judgment.
Reversed and remanded for a new trial.
NOTES
[1] Defendant Honore Vercruyssen was made a party as owner of the vehicle; however, the record does not reveal a disposition of the claims against this party. Judgment was entered in behalf of the defendant Fernand J. Vercruyssen only.