270 N.J. Super. 356 (1994)
637 A.2d 214
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DANIEL EDWARD KATELY, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GEORGE KATELY, SR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1993.
Decided February 10, 1994.
*358 Before Judges MICHELS, KESTIN and WEFING.
George T. Daggett argued the cause for respondents (Daggett & Kraemer, attorneys; Mr. Daggett, of counsel and on the letter briefs).
Thomas E. Bracken, Assistant Sussex County Prosecutor, argued the cause for respondent (Dennis O'Leary, Sussex County Prosecutor, attorney; Mr. Bracken, of counsel and on the letter briefs).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Following a joint jury trial, defendant Daniel Edward Kately was convicted of (1) death by auto, a crime of the third degree, in violation of N.J.S.A. 2C:11-5; (2) two counts of witness tampering, a crime of the third degree, in violation of N.J.S.A. 2C:28-5a, and (3) driving while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50. Defendant George Kately, Sr. was convicted of one count of witness tampering, a crime of the third degree, in violation of N.J.S.A. 2C:28-5a.
The trial court sentenced Daniel Kately to thirty days in the Keogh Dwyer Correctional Facility (Correctional Facility), fined him $300, assessed a $30 Violent Crimes Compensation Board (VCCB) penalty and revoked his driving privileges for twelve months for his conviction for driving while under the influence of intoxicating liquor. In addition, for the conviction for death by *359 auto, the trial court sentenced Daniel Kately to three years probation conditioned upon his serving 270 days in the Correctional Facility without parole, which sentence was to be served consecutively to the thirty day sentence imposed for driving while under the influence of intoxicating liquor, assessed a $500 VCCB penalty and revoked his New Jersey driving privileges for twenty four months, which revocation was to run consecutively to his release from the Correctional Facility and consecutively to the twelve month revocation imposed for driving while under the influence of intoxicating liquor. Finally, the trial court merged Daniel Kately's witness tampering convictions and sentenced him to two years probation, which was to run consecutively to the probationary term imposed for his conviction for death by auto, ordered him to perform fifty days of community service, fined him $2500 and assessed a $50 VCCB penalty. The trial court sentenced George Kately to three years probation on the condition that he perform ninety days of community service, fined him $5000 and assessed a $50 VCCB penalty for his conviction for witness tampering. Both Daniel Kately and George Kately appealed and their motions to consolidate the appeals were granted.
Defendant Daniel Kately seeks a reversal of his convictions on the following grounds set forth in his letter brief:
I. THE ADMISSION OF TESTIMONY ABOUT DRINKING PARTIES IN A FIELD ACROSS THE STREET FROM THE KATELY HOME WAS ERROR.
II. THE COURT BELOW ERRED IN ADMITTING INTO EVIDENCE THE BLOOD TEST RESULTS.
Defendant George Kately seeks a reversal of his conviction on the following grounds set forth in his letter brief:
I. THE ADMISSION OF TESTIMONY ABOUT DRINKING PARTIES IN A FIELD ACROSS THE STREET FROM THE KATELY HOME WAS ERROR.
II. THE EVIDENCE SUBMITTED IN THIS CASE AS TO HABIT WAS PREJUDICIAL TO THE DEFENDANT, GEORGE KATELY, OVER AND ABOVE A RULE 4 ANALYSIS.
We have carefully considered these contentions and all of the supporting arguments advanced by each defendant and find that they are clearly without merit. R. 2:11-3(e)(2).
*360 Although we are satisfied that there is no basis upon which to overturn these convictions, we deem it appropriate to comment further on defendant Daniel Kately's claim that the trial court erred in admitting testimony describing his history of drinking in the field across the street from his home. Daniel Kately essentially argues that the challenged evidence did not qualify as "habit evidence" and, even if it did, it should have been excluded under Evid.R. 4 (now N.J.R.E. 403)[1] because its probative value was minimal in light of the ample evidence of his intoxication on the evening of the fatal accident. We disagree for the following reasons.
At an Evid.R. 8 (now N.J.R.E. 104(a)) hearing to determine the admissibility of testimony concerning Daniel Kately's drinking habits, the State's proofs demonstrated that Daniel Kately, Andrew Sickel, Marcy Simmons Burke and Donna Demerest often met in the evening to drink. Sickel testified that he went to Daniel's home every night after work and that after dinner they would go to the field on the Kately farm, which was located near Daniel's home. According to Sickel, they had been drinking beer there on a regular basis every night for about one year prior to the accident. Sickel further testified that he and Daniel each would consume anywhere from one to two six-packs of beer at these gatherings. These parties took place even in cold weather. Sickel estimated that Daniel got drunk there three or four times per week. Demerest testified that starting in September 1986 she also frequented the field almost every night to drink. She testified that she saw both Sickel and Daniel get drunk, but could not recall how often. Burke testified that the group would get together either at Daniel's house or in the field. She began frequenting the parties every night in the Spring of 1987. Burke *361 also testified that they usually drank beer and that she saw Daniel drunk approximately five nights per week.
At the conclusion of the hearing, the trial court held that the testimony regarding Daniel Kately's habit of intemperance prior to the accident was admissible. The trial court reasoned that the habit testimony was "probative of the issue of intoxication insofar as it relate[d] to the issue of reckless behavior as being an element of the offense of death by auto." The trial court further found that the probative value of the evidence substantially outweighed any prejudice. The court explained that this evidence was admissible as a response to defendant's attempt to rebut an inference of recklessness by his asserting that the accident may have been caused by swerving to avoid a deer in the road.

A. Testimony Regarding Daniel Kately's Nightly Drinking Constituted Habit Evidence.

A prosecutor may not introduce evidence of a character trait of the defendant unless the defendant first offers evidence of good character. Evid.R. 47 (now N.J.R.E. 404(a)(1) and N.J.R.E. 405(a)). Evid.R. 49 (now N.J.R.E. 406(a)) provided, however, that "[e]vidence of habit or custom whether corroborated or not is admissible to prove conduct on a specified occasion in conformity with the habit or custom." The comment to Evid.R. 49 (now N.J.R.E. 406(a)) explained the difference between habit evidence and evidence of general character traits and the reasons for their admissibility:
The relevance of habitual behavior to an understanding of a man's conduct on a specified occasion is substantially greater than the relevance of his general character traits for care or skill. Thus, evidence of habitual careful behavior is admissible to prove that a person acted carefully on a particular instance, while evidence of a general character trait for carefulness is not. See Falknor, "Extrinsic Policies Affecting Admissibility," 10 Rutgers L.Rev. 574, 589-590 (1956). McCormick, Evidence (1972), sec. 195, at 462-463. [Biunno, Current N.J. Rules of Evidence, comment 1 on Evid.R. 49 (1992)].
Professor McCormick further explained this difference:
Although the courts frown on evidence of a person's traits of character when introduced to prove how he acted on a given occasion, they are more receptive to *362 evidence of his habits or of the customary behavior of organizations. To understand this difference, one must appreciate the distinction between habit and character. The two are easily confused. People sometimes speak of a habit for care, a habit for promptness, or a habit of forgetfulness. They may say that an individual has a bad habit of stealing or lying. Evidence of these "habits" would be identical to the kind of evidence that is the target of the general rule against character evidence. Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness. Habit, in the present context, is more specific. It denotes one's regular response to a repeated situation. If we speak of a character for care, we think of the person's tendency to act prudently in all the varying situations of life  in business, at home, in handling automobiles and in walking across the street. A habit, on the other hand, is the person's regular practice of responding to a particular kind of situation with a specific type of conduct. Thus, a person may be in the habit of bounding down a certain stairway two or three steps at a time, of patronizing a particular pub after each day's work, or of driving his automobile without using a seatbelt. The doing of the habitual act may become semi-automatic, as with a driver who invariably signals before changing lanes.
Evidence of habits that come within this definition has greater probative value than does evidence of general traits of character. Furthermore, the potential for prejudice is substantially less. By and large, the detailed patterns of situation-specific behavior that constitute habits are unlikely to provoke such sympathy or antipathy as would distort the process of evaluating the evidence. [McCormick on Evidence, § 195 at 825-26 (Strong ed., 4th ed. 1992) (footnotes omitted) (emphasis added)].
See also State v. Radziwil, 235 N.J. Super. 557, 564-65, 563 A.2d 856 (App.Div. 1989), aff'd o.b., 121 N.J. 527, 582 A.2d 1003 (1990); State v. Bogus, 223 N.J. Super. 409, 428-29, 538 A.2d 1278 (App. Div.), certif. denied, 111 N.J. 567, 546 A.2d 497 (1988); Burd v. Vercruyssen, 142 N.J. Super. 344, 351, 361 A.2d 571 (App.Div.), certif. denied, 72 N.J. 459, 371 A.2d 64 (1976); see also Simplex, Inc. v. Diversified Energy Sys. Inc., 847 F.2d 1290, 1293-94 (7th Cir.1988); Loughan v. Firestone Tire & Rubber Co., 749 F.2d 1519, 1524 (11th Cir.1985); Reyes v. Missouri Pac. R.R. Co., 589 F.2d 791, 794-95 (5th Cir.1979); Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 511 (4th Cir.1977), cert. denied, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978).
Thus, the determination of whether the trial court properly admitted testimony of Daniel Kately's nightly drinking as habit evidence depends largely on whether that conduct constituted a character trait or habit.
*363 Under the above analysis, testimony of Daniel Kately's nightly drinking was properly admitted as habit evidence because it was relevant and it described with specificity his routine practice of drinking in a particular situation. First, the evidence was relevant to prove that Daniel Kately was driving recklessly on the night in question. Daniel Kately was charged with death by auto in violation of N.J.S.A. 2C:11-5, which provides:
Criminal homicide constitutes death by auto or vessel when it is caused by driving a vehicle or vessel recklessly.
"Recklessly" is defined by the New Jersey Code of Criminal Justice as follows:
A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. "Recklessness," "with recklessness" or equivalent terms have the same meaning. [N.J.S.A. 2C:2-2b(3)].
With respect to drunk driving, "[o]ur courts have concluded that a jury may infer that an individual who drives while intoxicated is consciously disregarding the risk of an accident." State v. Radziwil, supra, 235 N.J. Super. at 563, 563 A.2d 856 (citing State v. LaBrutto, 114 N.J. 187, 204, 553 A.2d 335 (1989) and State v. Bogus, supra, 223 N.J. Super. at 419, 538 A.2d 1278). Thus, whether or not Daniel Kately was driving while intoxicated at the time the passenger in his vehicle, Kevin Figurelli, was killed is plainly relevant to the issue of recklessness.
Second, the evidence of Daniel Kately's attendance at the nightly drinking parties demonstrated that he drank to the point of intoxication on a regular basis. Sickel testified that Daniel became intoxicated approximately three or four times per week and Burke testified that Daniel was drunk about five times per week. Demerest also testified that Daniel was drunk during at least some of the parties.
The State's proofs further show a sufficient pattern of alcohol consumption and intoxication by Daniel Kately and his friends to *364 conclude that they had a habit of drinking beer nightly. Sickel, Burke and Demerest all testified that Daniel attended beer parties with them every night. Since the fatal motor vehicle accident occurred at night, after this same group of friends gathered together for at least a few hours, the trial court properly admitted evidence of Daniel Kately's regularly becoming intoxicated on the night that he left his home and ran his truck off the road, causing Figurelli's death. Therefore, because the testimony (a) was relevant to the issue of recklessness and (b) described with specificity Daniel Kately's practice of becoming intoxicated each night, the testimony was properly admitted as habit evidence within the meaning of Evid.R. 49 (now N.J.R.E. 406(1)). See State v. Radziwil, supra, 235 N.J. Super. at 565-66, 563 A.2d 856 (bartender's testimony that defendant became intoxicated nearly every week at social club was admissible habit evidence to prove defendant was intoxicated on weekend that fatal car accident occurred); see also Loughan v. Firestone Tire & Rubber Co., supra, 749 F.2d at 1523-24 (evidence that plaintiff tire mechanic routinely brought cooler of beer to work and drank on the job was admissible habit evidence to prove he was intoxicated and contributorily negligent in products liability action); State v. Wadsworth, 210 So.2d 4, 6-7 (Fla. 1968) (liquor store clerk's testimony that defendant purchased miniature bottles of vodka two or three times per week for more than two years before fatal car collision was admissible habit evidence to prove intoxication). But cf. Reyes v. Missouri Pac. R.R. Co., supra, 589 F.2d at 794-95 (defendant's four prior misdemeanor convictions for public intoxication in three-and-one-half year period were of insufficient regularity to constitute habit evidence).

B. The Probative Value of the Habit Evidence Substantially Outweighed Its Possible Prejudicial Effect.

Nor should the habit evidence have been excluded under Evid.R. 4 (now N.J.R.E. 403) as unduly prejudicial. Evid.R. 4 (now N.J.R.E. 403) provided for the exclusion of relevant evidence if the trial court found that its probative value was substantially *365 outweighed by the risk of undue consumption of time, substantial danger of undue prejudice, confusing the issues or misleading the jury. The comment to the former rules of evidence explains that
evidence claimed to be unduly prejudicial can only be excluded where its probative value "is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation" of the basic issues of the case. State v. Thompson, 59 N.J. 396 [283 A.2d 513] (1971). It is error, for example, for a judge to exclude evidence under Rule 4 because it would "maybe" create substantial prejudice. State v. Bowens, 219 N.J. Super. 290-297 [530 A.2d 338] (App.Div. 1987). [Biunno, supra, comment 1 on Evid.R. 4].
Daniel Kately contends that the trial court should have excluded the evidence of the nightly beer parties because "there was ample proof of [his] condition one way or the other without relying on habit." Daniel Kately asserts that the habit evidence testimony was unduly cumulative because sufficient evidence of his intoxication had already been admitted, including a blood test and the testimony of officers at the scene of the accident. Daniel Kately argues that, in his words, "when there is the opportunity for other evidence of intoxication, a Rule 4 [now N.J.R.E. 403] analysis may defeat the habit testimony" and that "habit testimony should be admissible only in situations where there is no other evidence." We disagree.
"If in a particular case the probative value of the evidence of habit or custom is substantially outweighed by the counterfactors of undue consumption of time, undue prejudice or confusion of issues, the offered evidence of habit may be excluded in the court's discretion under Rule 4 [now N.J.R.E. 403]." Biunno, supra, comment 1 on Evid.R. 49 (now N.J.R.E. 406(a)). With respect to assessing the probative value and prejudicial nature of habit evidence, Professor McCormick explained:
Evidence of habits that come within this definition has greater probative value than does evidence of general traits of character. Furthermore, the potential for prejudice is substantially less. By and large, the detailed patterns of situation-specific behavior that constitute habits are unlikely to provoke such sympathy or antipathy as would distort the process of evaluating the evidence. [McCormick on Evidence, supra, § 195 at 826 (footnotes omitted)].
*366 Specifically addressing evidence of the habit of intemperance, Professor McCormick noted:
Intemperance seems one of the more potentially prejudicial habits. Partly, the problem stems from the fact that the term may denote a general disposition for excessive drinking (a trait) or a practice of drinking a certain number of glasses of whiskey every night at home (a habit). Thus, the probative force of what is loosely called the habit of intemperance to prove drunkenness on a particular occasion depends on the regularity and details of the characteristic behavior. This may help explain in part the conflicting results when evidence of "habitual intemperance" is brought forward. [McCormick on Evidence, supra, § 195 at 827 n. 8].
Thus, the assessment of the probative value of habit evidence under Evid.R. 4 (now N.J.R.E. 403) must focus on the "regularity and details of the characteristic behavior." See ibid. In this regard, although other evidence of Daniel Kately's intoxication on the night of the accident was admitted, the evidence of the nightly drinking was nonetheless highly probative because of the frequency and regularity with which he drank and the consistency of the details of these recurring parties. The same people always attended. They always drank beer. They always supplied relatively the same amount of beer, and Daniel Kately was known to become intoxicated at these parties. All of this occurred on a regular, nightly basis over a period of approximately one year. Additionally, the fact that they usually went to the field to meet, but on the night of the incident they drank elsewhere, does not detract from the probative value of their "habit" because at least one witness testified that occasionally they went to someone's home to hold their parties.
Furthermore, the probative value of the habit evidence was not substantially outweighed by its prejudicial effect. We recognize that evidence of intemperance can be particularly prejudicial because a jury may have a tendency to convict based on a perceived general disposition for excessive drinking. See McCormick on Evidence, supra, § 195 at 827 n. 8. Nonetheless, in State v. Radziwil, supra, 235 N.J. Super. at 566-67, 563 A.2d 856, we concluded that "while the evidence of defendant's habitual intoxication ... undoubtedly cast him in a bad light in the eyes of the jury, this prejudice to defendant did not outweigh the probative *367 value of the evidence." See also State v. Stevens, 115 N.J. 289, 308, 558 A.2d 833 (1989) (quoting State v. West, 29 N.J. 327, 335, 149 A.2d 217 (1959)) ("That evidence is shrouded with unsavory implications is no reason for exclusion when it is a significant part of the proof."). The same is true in this case.
Finally, we point out that the trial court carefully and fully instructed the jury as to how the challenged testimony could be used with regard to Daniel Kately's conduct on the night of the fatal accident. In sum, the trial court did not err by admitting the challenged testimony as habit evidence.
Beyond this, even making the dubious assumption that the trial court erred by admitting the habit evidence, the error was harmless beyond a reasonable doubt. It was not "clearly capable of producing an unjust result." R. 2:10-2; State v. Lair, 62 N.J. 388, 392, 301 A.2d 748 (1973); State v. Hock, 54 N.J. 526, 538, 257 A.2d 699 (1969), cert. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970); State v. Bogus, supra, 223 N.J. Super. at 429, 538 A.2d 1278. Since the proof of Daniel Kately's guilt was overwhelming, there was no real possibility that the claimed error "led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971).
Affirmed.
WEFING, J.S.C., (temporarily assigned) concurring.
My colleagues have concluded that the trial court properly received into evidence under Evid.R. 49 (now Evid.R. 406(a)) testimony that Daniel Kately repeatedly engaged in excessive drinking with his friends since it demonstrated Kately's habit of intemperance. I am unable to agree that the evidence presented constituted evidence of habit as that term is understood and applied in construing Evid.R. 49, for the factual complex of this particular incident is sufficiently at variance with the challenged testimony that it should not have been received. Because I am also satisfied, however, that in this case the evidence of defendants' *368 guilt was so overwhelming that any error which occurred was harmless, I concur in affirming their convictions.
Defendant Daniel Edward Kately (Daniel) was convicted of death by auto, driving while under the influence of intoxicating liquor and two counts of witness tampering. The charges arose out of a single vehicle automobile accident that occurred on August 27, 1987 at approximately 10:35 p.m. Defendant Daniel Kately was driving his full-size Dodge pickup. His passengers were Andrew Sickel, Donna Demerest, Marcy Simmons Burke and Kevin Figurelli. It had been raining that night and the road was wet. Daniel's vehicle went off the road and struck some trees. Figurelli was thrown from the truck and died. Persons who responded to the accident scene noted an odor of alcohol about Daniel and that his eyes were red and watery. An empty carton of beer was found on the floor of the truck cab. Daniel was taken to a local hospital and consented to have a blood sample drawn. Subsequent analysis at the New Jersey State Police Laboratory revealed a blood alcohol content of .171 percent. Examination of those same samples at the State Medical Examiner's Office resulted in a blood alcohol content of .158 percent.
Andrew Sickel related the events of that evening. He arrived at Daniel's house at approximately 6:00 p.m. and after Daniel finished his dinner, the two of them left in Daniel's truck to pick up Demerest, Burke and Figurelli. The five then went to Sparta Pizza. While at Sparta Pizza, they met two friends of Kevin Figurelli and Figurelli asked these two friends to purchase beer for the group, all of whom were under legal age. They agreed and bought two cases of Budweiser beer in bottles for which Daniel paid. The five then left in Daniel's truck to pick up another friend, Jennifer Kalb, who lived some five minutes away. The group proceeded to the Rolling Hills condominium complex in Andover and congregated at the recreational center known as "The Dome." Sickel placed their arrival at between 7:00 and 7:30 p.m. They watched television, listened to music and drank. Sickel estimated that Daniel consumed at least a six pack of beer. *369 They left around 10:00 p.m. The accident occurred on the way home, after they had dropped off Kalb. Sickel testified that he considered Daniel to be intoxicated when they got into the truck and that on the way, he and the others had remonstrated with Daniel about his driving. Daniel would not, however, let anybody else take the wheel. The fatal accident occurred on the way back to the Kately residence.
Following a R. 8 hearing, the trial court permitted testimony about Daniel's extensive prior drinking. According to Sickel, who described himself as Daniel's best friend up until the time of the accident, he would go to the Kately home every night after work. After dinner, they would go together to the field across from Daniel's house and drink beer. Sickel testified that both he and Daniel would drink anywhere from one to two six packs of beer each a night. Sickel further related that Daniel would get drunk approximately three to four times a week.
Demerest, who had been a passenger in the truck on the night in question, also testified that she would go to this field every night to drink with Sickel and Daniel. Burke testified to the same effect and further stated that she had seen Daniel drunk approximately five nights a week as a result of these gatherings in the field across from his home.
Daniel testified in his own defense. He admitted that he would get together "a few times a week" with his friends in the field, and that he would drink beer two or three nights a week. He testified that he would drive his truck to the field but would walk back home.
This court has most recently addressed the issue of the admissibility of evidence of repeated intoxication under Evid.R. 49 in State v. Radziwil, 235 N.J. Super. 557, 563 A.2d 856 (App.Div. 1989), aff'd o.b., 121 N.J. 527, 582 A.2d 1003 (1990). In that case, defendant was convicted of aggravated manslaughter and death by auto following the death of Keith MacCormack, a passenger in a car driven by Daleston Cote which was struck at a high rate of speed by a hit and run vehicle. No one was able to obtain a *370 license plate number from the offending car, but the police were able to determine, from debris at the scene, the color, year and make of the vehicle. A year and a half after the accident, a local police officer observed a corresponding car with evident repairs to its front end. An appropriate search revealed that on the day of the accident it had been owned by the defendant and had been sold by him four days thereafter. Forensic tests confirmed that it was, in fact, the car involved in the accident. Defendant was interviewed by the police and admitted that he had owned the car on the date in question, but denied that he had been involved in the accident. He did admit that on that date he had been at Rova Farms, a Russian social club, which was located approximately six miles from the scene of the accident.
The prosecution wished to establish that Radziwil was intoxicated at the time of the accident in order to establish the elements of death by auto under N.J.S.A. 2C:11-5 or aggravated manslaughter under N.J.S.A. 2C:11-4(a); See State v. LaBrutto, 114 N.J. 187, 553 A.2d 335 (1989). However, the prosecution lacked direct evidence of intoxication since the driver had fled the scene. In that context, the trial court permitted the prosecution to present as a witness the bartender at Rova Farms from 1981 to the end of 1985. He testified that Mr. Radziwil "came to Rova Farms just about every weekend until the end of November 1984 and that he always got drunk shortly after arriving." 235 N.J. Super. at 563, 563 A.2d 856. The trial court's decision to receive this evidence was affirmed on appeal, in an opinion which characterized the issue on appeal as whether "evidence that a defendant regularly became intoxicated every weekend at a particular bar is admissible as evidence of a habit to prove that defendant was intoxicated at the time of the automobile collision...." Id. at 561, 563 A.2d 856.
The evidence offered in Radziwil dealt with the defendant's attendance and activities at the same bar every weekend. The defendant, moreover, admitted that just before the accident, he had in fact been at that same establishment. Absent the testimony *371 of the Rova Farms bartender, there was no evidence of defendant's intoxication.
Here, in contrast, there was ample evidence of Daniel's intoxication on the night in question both from his companions that evening and from the blood alcohol analyses which were performed. The evidence was thus not necessary to establish intoxication. I am of the view that because the circumstances surrounding this tragic incident differ completely from the descriptions furnished by Sickel, Demerest and Burke of repeated drinking in the nearby field, the evidence received does not qualify as evidence of habit. The only common element between the events of August 27, 1987 and the drinking parties described by Daniel's friends, is the consumption of beer. If the issue at trial had been whether Daniel became intoxicated on the night in question in the field across from his residence, the testimony may have been proper. That was not, however, how the accident occurred.
Habit has been defined as "one's regular response to a repeated situation ... [a] habit ... is the person's regular practice of responding to a particular kind of situation with a specific type of conduct." McCormick on Evidence § 195, at 825-26 (4th ed. 1992). McCormick recognizes the problems attendant to the presentation of evidence about repeated use of alcohol.
Intemperance seems one of the more potentially prejudicial habits. Partly, the problem stems from the fact that the term may denote a general disposition for excessive drinking (a trait) or a practice of drinking a certain number of glasses of whiskey every night at home (a habit). Thus, the probative force of what is loosely called the habit of intemperance to prove drunkenness on a particular occasion depends on the regularity and details of the characteristic behavior.
[Id. at 827 n. 8.]
I am satisfied that the evidence presented in this trial properly established that Daniel Kately had a trait for excessive drinking, but improperly suggested that he had a habit of congregating with his friends at a specific location, consuming alcohol and then taking the wheel of his truck to drive home, based upon his predilection for nightly drinking sessions across the street for his home.
*372 I do agree, however, that the proof of Daniel Kately's guilt, even apart from the challenged evidence on drinking, was overwhelming. I am thus satisfied that there was no real possibility that this evidence "led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971), and thus I consider its reception to have been a harmless error and I concur in the affirmance of his convictions.
Defendant George Kately, Sr., father of Daniel Kately, was tried along with his son and was convicted of one count of witness tampering. He also urges that this evidence of drinking should not have been received and that he was unduly prejudiced by its admission.
George Kately was indicted on two counts of witness tampering, charged with attempting to induce Andrew Sickel and Marcy Simmons Burke to testify falsely. He was acquitted on the count relating to Marcy Simmons Burke and convicted on the count relating to Andrew Sickel. Sickel testified of the repeated efforts made by Mr. Kately to influence his testimony and that of the others who were present at the time of the accident. George Kately instructed Sickel to say that everyone present had consumed more alcohol than Daniel, that Daniel had had no trouble driving that evening and that any beer consumed had been from cans rather than from bottles. According to Sickel, George Kately threatened that if he did not cooperate with his testimony in this manner, "there would be hell to pay or somebody would be sorry in the long run." Sickel was seventeen years of age at the time and initially went along with the elder Kately who repeatedly drilled him and coached him on his testimony. He had worked for Mr. Kately, knew of his bad temper and was afraid of him. Eventually, Sickel's story, and those of his companions, began to unravel.
Within his instructions, the trial court indicated to the jury that the evidence pertaining to prior drinking bore upon the actions of defendant Daniel Kately. The fact that the jury acquitted defendant George Kately on one of the counts of witness tampering *373 clearly indicates, in my view, that this jury was not unduly prejudiced by receipt of this evidence and was not led to a result which it otherwise would not have achieved. I thus consider the admission of this evidence harmless error as to George Kately as well.
NOTES
[1] By order dated September 15, 1992, the Supreme Court of New Jersey adopted the New Jersey Rules of Evidence, N.J.R.E. 101 to 1103. Pursuant to the Rule adoption provisions of N.J.S.A. 2A:84A-36, these new rules became effective July 1, 1993. Since these cases were tried in 1992, the new rules are not applicable.